1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7   A.P.,

8            Plaintiff,

9        v.

10   KILOLO KIJAKAZI, et al.,

11            Defendants.

Case No.  23-cv-01184-EMC


**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND DENYING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

Docket Nos. 9, 13

12

13

14

15

16

        Pending before the Court is Plaintiff's Motion for Summary Judgment ("Pl's Mot."),
Docket No. 9, and Defendants' Cross-Motion for Summary Judgment ("D's Mot."), Docket No.
13.  Claimant A.P. seeks review of the Commissioner of Social Security Administration's final
decision denying her applications for both disability insurance benefits and supplemental security
income.  *See generally* Pl's Mot.  A.P. has exhausted her administrative remedies with respect to
her claim of disability; this Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  A.P. seeks an
order reversing the agency decision and remanding for payment of benefits, or alternatively,
remanding for further administrative proceedings.  Defendant Kilolo Kijakazi, in her capacity as
Commissioner of the Social Security Administration ("SSA"), opposes the motion and cross-
moves for summary judgment.  Docket No. 13.

        Having considered the parties' briefs and the administrative record, the Court hereby
**GRANTS** A.P.'s motion for summary judgment and **DENIES** the SSA's motion cross-motion for
summary judgment.  The case shall be remanded for further proceedings before the Administrative
Law Judge ("ALJ") in accordance with this Order.

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## I.     FACTUAL AND PROCEDURAL BACKGROUND

On May 1, 2020, A.P. filed a Title II application for disability insurance benefits and a Title XVI application for supplemental security income.  *See* AR 227-241.  In both applications, A.P. alleged a disability beginning March 26, 2020.  *See* AR 228, 238.  A.P. alleged both physical and mental disability due to a status post-Covid-19 infection, pneumonia, anxiety, depression, and post-traumatic stress disorder ("PTSD").  *See* AR 159.

A.P.'s claims were initially denied on October 22, 2020, and again upon reconsideration on March 11, 2021.  *See* AR 144, 159.  A.P. then filed a request for a hearing before an administrative law judge ("ALJ").  *See* AR 165-166.  On November 4, 2021, ALJ Benton held a telephonic hearing to reconsider whether A.P. is disabled under the relevant sections of the Social Security Act.  *See* AR 21.  The ALJ again denied A.P.'s claims on December 27, 2021.  AR 18. The Appeals Council subsequently reviewed A.P.'s request for appeal and affirmed ALJ Benton's decision on January 10, 2023, adopting the ALJ decision as the final decision of the Commissioner of Social Security Administration (the "Commissioner").  AR 1-3.

A.     Evidence Considered

A.P. was initially hospitalized in March 2020 due to Covid-19 complications, with hypoxia, pneumonia, sepsis, acute renal failure, and acute encephalopathy.  *See* AR 28, 382, 462. After approximately two months in intensive care, she was improving, and was discharged to a rehabilitation facility.  *See* AR 28, 472.  She was discharged from the rehabilitation facility on June 3, 2020, and continued out-patient therapy services.  *See* AR 28, 471.

During the hearing, A.P. testified that she suffers from both physical and mental impairments.  With respect to her physical impairments, she stated that she has difficulty breathing including getting winded quickly, hindering her ability to walk and stand.  AR 48-49.  She also attested to having difficulty walking because of an issue with her balance, and difficulty sitting down for more than 45 minutes without experiencing back and leg pain.  *See* AR 48-49.  She also reported being unable to lift more than a gallon of milk.  *See* AR 49. She ultimately stopped working after she was infected with Covid-19 which she contracted at her last job. *See* AR 45.

//

1    Regarding A.P.'s mental impairments, she stated that she has a fear "of the outside world."

2    AR 53-54.  Specifically, A.P. has anxiety about returning to work because she was infected with

3    Covid-19 at her last job even though she "did everything right."  AR 53.  A.P. attests that the

4    Covid-19 infection that she contracted caused her lungs to fill up with liquid which led to the

5    breathing issues she is experiencing today.  *See* AR 52.  A.P previously resigned from a job

6    because she was experiencing severe anxiety, depression, and PTSD.  *See* AR 46.

7    A.P. attested that she lives alone with her three children—who are ages nine, five, and

8    four.  AR 50-51  A.P. attests that she is able to care for her children on her own to an extent; she

9    can cook light meals, help the children with their homework, watch TV, and play boardgames.

10   *See* AR 50-51.  On the other hand, A.P. testified to experiencing several limitations.  While A.P.

11   can cook and do the dishes, she must do both in increments.  *See* AR 51.  She cannot sweep or

12   mop, she cannot go grocery shopping, and she cannot do laundry on her own and needs her sisters'

13   assistance to do all three.  *See* AR 51-52. Finally, A.P. testified that she does not have any hobbies

14   and does not go anywhere unless she is required to—e.g., for doctors' appointments.  *See* AR 51.

15   But even when required to go outside, she needs her sisters to accompany her due to her severe

16   anxiety of contracting Covid-19 again.  *See* AR 51.

17   In addition to A.P.'s testimony, ALJ Benton considered A.P.'s treatment history and the

18   objective medical evidence in the record.  *See* AR 28-32.  The ALJ considered A.P.'s

19   improvement in both physical and mental health from the time she was released from

20   rehabilitation until 2021, citing a clear chest, a normal speaking rate, improved oxygenation,

21   normal breath sounds, normal extremity function, and stable neurological signs.  *See id.*  The ALJ

22   also reasoned that the level of care that A.P. sought after being discharged from rehabilitation was

23   inconsistent with how severe she claimed both her physical and mental disabilities were.  *See* AR

24   28-29.  Specifically, one year after her discharge, A.P. was not seeing a pulmonologist even

25   though her primary care doctor referred her to one because her insurance was inactive.  *See* AR

26   28, 925.  A.P. was also unable to maintain counseling for her anxiety after being discharged from

27   the hospital due to a lack of insurance.  *See* AR 29, 763.

28   //

United States District Court
Northern District of California

3

B.    ALJ Determination

ALJ Benton employed the five-step sequential process to determine whether A.P. was disabled. *See* 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). Under that framework, if an ALJ finds that the claimant is disabled at a given step, then the ALJ does not need to proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ does not find that the claimant is disabled, the ALJ will continue to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, ALJ Benton considered whether A.P. was engaged in substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). She found that A.P. had not engaged in substantial gainful activity since March 26, 2020, i.e,. the alleged disability onset date. *See* AR 23.

At step two, ALJ Benton evaluated whether A.P. suffered from a "severe medically determinable physical or mental impairment, or combination of impairments" for a continuous period of at least 12 months. See 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii); see also 20 C.F.R. §§ 404.1509, 416.909. The ALJ determined that A.P. suffered from the following severe impairments: "status post Covid-19 infection and pneumonia, obesity, diabetes, anxiety, depression, and [PTSD]." AR 23-24.

At step three, if an impairment or combination of impairments meets or is equal to one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 in both duration and severity, then the ALJ must find the claimant to be disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). ALJ Benton concluded that A.P.'s impairments did not meet or equal a listed impairment. *See* AR 24. With respect to A.P.'s mental impairments, the ALJ assessed her symptoms according to "paragraph B" and "paragraph C" criteria but found they were not satisfied. *See* AR 24-26.

At step four, ALJ Benton determined whether A.P.'s residual functional capacity allowed her to perform her past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). With respect to A.P.'s physical residual functional capacity, ALJ Benton found that she had the ability to perform light work, and that she "can occasionally climb stairs and ramps; can never

4

climb ladders, ropes, and scaffolds; can occasionally stoop, kneel, crouch, and crawl; must avoid concentrated exposure to hazards such as unprotected heights, machinery, moving mechanical parts; must avoid even moderate exposure to dusts, odors, fumes, gases, humidity, and other pulmonary irritants." AR 26–27.  With respect to A.P.'s residual mental functional capacity, the ALJ concluded that A.P. "can understand, remember, and carry out simple instructions; can occasionally interact with supervisors, coworkers, and the public; can make simple work decisions; can occasionally tolerate changes in work locations; and cannot work at a strict production rate, such as on an assembly line."  AR 27.  Based on the physical and mental residual functional capacity assessed, the ALJ found that A.P. was not able to perform past relevant work, which was consistent with the vocational expert's testimony at the ALJ's hearing.  *See* AR 32; *see also* AR 56-57 (hearing transcript).

Finally, at step five, the ALJ considered whether, given A.P.'s age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy that she could perform.  *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  The ALJ agreed with the vocational expert's testimony that there were such jobs, such as photocopy machine operator, non-postal mail clerk, and office helper.  *See* AR 33-34.  Accordingly, ALJ Benton issued the decision finding A.P. not disabled.  *See* AR 34.  A.P. Thereafter, the Appeals Council denied A.P.'s request for review of the ALJ's decision.  AR 1-3. The Appeals Council stated:

> We found no reason under our rules to review the Administrative Law Judge's decision. Therefore, we have denied your request for review. This means that the Administrative Law Judge's decision is the final decision of the Commissioner of Social Security in your case.

*Id.*  A.P. now seeks to overturn the ALJ's decision, which is the final decision of the Commissioner in her case.  *See generally* Pl's Mot.

//

//

//

United States District Court
Northern District of California

## II.    <u>LEGAL STANDARD</u>

After a final decision on a claim for benefits has been issued, a claimant may seek judicial review of that decision by a district court.  42 U.S.C. § 405(g).  The Commissioner's decision will be disturbed only if: (1) the ALJ has committed legal error; or (2) if the ALJ's findings are not supported by substantial evidence.  *Lingenfelter v. Astrue*, 504 F.3d. 1028, 1035 (9th Cir. 2007).  Where, as here, the Appeals Council denies a claimant's request for review and adopts the ALJ's decision as the final decision of the Commissioner, the district court reviews the contents of the ALJ's decision to determine if remand is appropriate.  *See id.* at 1030 & n.2, 1033-35.

## III.    <u>DISCUSSION</u>

A.    <u>Legal Error</u>

A.P. claims that the ALJ's decision is erroneous on the following four grounds: (1) the record is not complete because the ALJ did not obtain additional worker's compensation records; (2) the ALJ did not properly consider the effect of A.P.'s obesity at step three of the analysis wherein the ALJ determined that A.P.'s impairment was not equal to one of the listed impairments in the disability statute; and (3) the ALJ erred in finding A.P.'s testimony as to the extent of her disability not credible.  Pl's Mot. at 2.  Each argument is addressed in turn below.

1.    <u>Completeness of the Record</u>

A.P. argues that the ALJ erred by failing to complete the record.  Specifically, A.P. claims that ALJ Benton had a duty during the hearing to affirmatively ask whether her worker's compensation records were exhibited.  Pl's Mot. at 3.

An ALJ has a duty to develop the record "fully and fairly"; this is true even when the claimant is represented by counsel.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).  The ALJ's duty to "conduct an appropriate inquiry" is triggered by "ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence."  *Id.*  The ALJ may discharge this duty by subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow for supplementation of the record.  *Id.*

A.P. argues that the ALJ erred because she did not inquire into whether A.P.'s worker

compensation records were in evidence.  However, at least some of A.P.'s workers' compensation records and medical examinations are included in the administrative record at Exhibit 14F.  *See* AR 855-913.  Not only are they in the record, ALJ Benton explicitly discusses Dr. Schmitz' worker's compensation medical report at step four of her analysis.  *See* AR 31-32.  A.P. fails to address why the included compensation records were ambiguous, or otherwise inadequate, triggering the ALJ's duty to ask for additional records.  *See* Pl's Mot. at 4.  These circumstances are akin to *Harris v. Commissioner of Social Security Administration*, 605 Fed. Appx. 612, 614 (9th Cir. 2015).  There, the Ninth Circuit rejected a nearly identical argument.  *Id.*  Specifically, the claimant failed to explain why the record was ambiguous or inadequate without the worker's compensation records, and the claimant failed to explain how the worker's compensation records would have compelled a more favorable outcome.  *Id.*  A.P.'s argument suffers from the same deficiency; worker compensation records were included in the record, and A.P. fails to explain why these included records were insufficient.  Accordingly, A.P.'s argument is unavailing.

A.P.'s reliance upon *Tonapetyan v. Halter*, 242 F.3d 1144 (9th Cir. 2001) does not require a different outcome as that case is distinguishable.  Pl's Mot. at 3.  Specifically, in *Tonapetyan*, the ALJ relied heavily on the testimony of a medical expert who found that the evidence of the claimant's mental impairment was too ambiguous to make a determination about the claimant's disability in denying benefits.  *See id.* at 1150.  The Ninth Circuit held that the ALJ erred by ignoring the expert's concerns and for relying on the ambiguous opinion, without obtaining a more detailed report.  *See id.* at 1150-51.  In the case at bar, A.P. does not argue the records that were included were ambiguous or otherwise insufficient.   In light of the above, the Court finds no error in the ALJ's development of the record.

2.      Factoring in Obesity

A.P. next argues that the ALJ erred in failing to consider how her obesity impacted the rest of her impairments.  A.P. did not specify which step of the ALJ's analysis this alleged deficiency affected.  *See* Pl's Mot. at 8.  However, A.P. relies upon *Burch v. Barnhart*, 400 F.3d 676 (9th Cir. 2005) to make her argument as to this point.  *Id.*  In *Burch*, the court considered the extent to which obesity must be considered as a compounding factor alongside other impairments at step

1 three of the analysis. 400 F.3d at 681-84. At step three the ALJ determines if the severity of the

2 claimant's impairment meets or equals an impairment enumerated by the statute. *See* §§

3 404.1520(a)(4)(iii). Because of this citation, the Court construes this argument as relating to step

4 three of the analysis wherein the ALJ assessed the severity of A.P.'s limitations and determined if

5 the impairments were equivalent to a listed impairment in the statute ("equivalency").

6       In social security cases, the claimant—not the ALJ—carries the initial burden of proving

7 the existence of a qualifying disability. *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989).

8 Obesity is not a separately listed impairment recognized in the statute. *Burch*, 400 F.3d at 682;

9 *see also* SSR 19-2p (2019) (policy interpretation ruling regarding impact of obesity). "[H]owever,

10 the functional limitations caused by the MDI of obesity, either alone or in combination with

11 another impairment(s), may medically equal a listing." SSR 19-2p (2019). To this end,

12 equivalence can be established if a claimant has multiple impairments, including obesity, none of

13 which meet the listing requirement, but are equivalent to a listed impairment in the aggregate. *See*

14 *id.* Importantly, however, an ALJ is not required to discuss the combined effects of a claimant's

15 obesity or other impairments or compare them to any listing in an equivalency determination,

16 *unless* the claimant presents evidence to establish equivalence. *See Burch*, 400 F.3d at 683; *see*

17 *also Lewis v. Apfel*, 236 F.3d 593, 514 (9th Cir. 2001) (holding that an ALJ's failure to consider

18 equivalence was not reversible error because the claimant did not offer any theory, plausible or

19 otherwise, as to how their impairments combined to equal a listing impairment).

20       In the present case, A.P. did not specify which listing she believes her impairments are

21 equal to, nor did A.P. present evidence which would support finding she suffered from a listed

22 impairment due to her obesity, alone or in combination with another impairment. *See, e.g.*, AR

23 48-54 (testimony of A.P. regarding her symptoms and impairments but not discussing impact of

24 obesity); AR 54-59 (testimony of vocational expert). Even before this Court, A.P.'s briefing is

25 silent as to any evidence or theory of equivalency that she purports was erroneously rejected by

26 the ALJ. *See* Pl's Mot. at 8. As the ALJ's duty to analyze the effects of a claimant's obesity is

27 triggered only when the claimant presents evidence to establish equivalence, the ALJ did not err in

28 this respect. *Burch*, 400 F.3d at 683; *Lewis*, 236 at 514. And while A.P. asserts that the ALJ erred

United States District Court
Northern District of California

1    for failing to consider A.P.'s obesity, this is not entirely accurate.  Specifically, the ALJ did

2    recognize the progression of A.P.'s BMI, fatigue, respiratory rate, ambulation, and cardiac signs in

3    making her determination as to listed disability at step three of the analysis.  *See* AR 24 ("I

4    considered the following listings and rulings: SSR 19-2p, obesity.").  Accordingly, the Court finds

5    no error in the ALJ's treatment of A.P.'s obesity.

6              3.    Credibility Determination

7         A.P. also argues that the ALJ erred in discrediting A.P.'s testimony regarding the extent of

8    her subjective pain, informing her limited functional capacity, as is considered at step four of the

9    analysis.  Pl's Mot. at 4-7; §§ 404.1520(a)(4)(iv) (assessing the residual functional capacity a

10   person maintains notwithstanding their impairment and whether the individual can still perform

11   past relevant work).

12        At step four of the analysis, the ALJ determined that A.P. maintained some residual

13   functional capacity and was not completely debilitated as A.P. attested.  AR 26–27.  To this end,

14   the ALJ determined that A.P. had only moderate limitations as opposed to marked ones.  AR 31.

15   Specifically, the ALJ found A.P.'s testimony only partially credible, stating "[her] medically

16   determinable impairments could reasonably be expected to cause the alleged symptoms; however,

17   [her] statements concerning the intensity, persistence and limiting effects of these symptoms are

18   not entirely consistent with the medical evidence and other evidence in the record for the reasons

19   explained in this decision."  AR 28.  In making this adverse credibility determination the ALJ

20   relied upon medical reports in the record, A.P.'s testimony as to her activities of daily living, and

21   A.P's treatment history to find A.P.'s testimony.  *See* AR 27-32.

22              a.    Adverse Credibility Based Upon Medical Reports

23        A.P. first argues that the ALJ's adverse credibility determination based upon medical

24   evidence in the record was erroneous.  Pl's Mot. at 4-7.  Specifically, A.P. argues that the ALJ did

25   not satisfy the "specific, clear, and convincing" standard in making this determination, which

26   applies when an ALJ deems a claimant's testimony as to subjective pain not credible.  *See id.*

27        An ALJ must undergo a two-step analysis to determine whether a claimant's testimony

28   regarding subjective pain is credible.  *Lingenfelter*, 504 F.3d. at 1035-36.  First, the ALJ

United States District Court
Northern District of California

determines whether the claimant has presented objective medical evidence of an underlying

impairment "which could reasonably be expected to produce the pain or other symptoms alleged."

*Id.* at 1036 (citing *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  If the

claimant meets the first step and there is no evidence of malingering, the ALJ can only reject the

claimant's testimony about the severity of her symptoms "by offering specific, clear and

convincing reasons for doing so" and supporting these reasons with substantial evidence.  *Smolen*

*v. Chater*, 80 F.3d 1273, 1281, 1284 (9th Cir. 1996); *see also Reddick v. Chater*, 157 F.3d 715,

722 (9th Cir. 1998) ("[g]eneral findings are insufficient.").  The "specific, clear, and convincing"

standard requires the ALJ to identify "which testimony she [finds] not credible, and . . . which

evidence contradict[s] that testimony."  *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020).

　　In determining the credibility of A.P.'s testimony as to physical and mental symptoms, the

ALJ did not find that A.P. was malingering and found that her "medically determinable

impairments could reasonably be expected to cause the alleged symptoms."  AR 28.  Accordingly,

the clear and convincing standard is applicable to the ALJ's finding that A.P.'s testimony

regarding the extent of her subjective pain was not credible.  *See Lambert*, 980 F.3d at 1277.

　　In *Lambert* the Ninth Circuit upheld a determination that the ALJ did not meet the clear

and convincing standard in discrediting the claimant's testimony.  980 F.3d at 1277.  There, the

ALJ explained in their decision that "the claimant's statements concerning the intensity,

persistence and limiting effects of [her] symptoms are not entirely consistent with the objective

medical and other evidence for the reasons explained in this decision."  *Id.*　The Ninth Circuit

explained that such a "boilerplate statement," does not meet the clear and convincing standard

because it does not identify which parts of the claimant's testimony were not credible and why.

*Id.*  Although the ALJ in *Lambert* did provide a detailed overview of the medical evidence in the

record, the court emphasized that "providing a summary of medical evidence . . . is not the same

as providing clear and convincing reasons for finding a claimant's symptom testimony not

credible."  *Id.* at 1278 (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)).  The

ALJ was instead required to link the testimony she found not credible with the evidence from the

record that contradicted that testimony" which was not done in that case.  *Id.* at 1277.

Similarly, in *Brown-Hunter*, the Ninth Circuit rejected the ALJ's finding that the claimant's testimony was not credible for failure to meet the clear and convincing standard. 806 F.3d at 495.  In that case, the ALJ concluded that the claimant had a residual functional capacity to perform "light work."  *See id.* at 490–91.  To support this finding, the ALJ paraphrased the claimant's testimony regarding her pain and limitations, followed by a summary of her treatments and medications, as well as some of her activities of daily living.  *See id.* at 491.  The ALJ followed this up with "eight paragraphs to summariz[e] the medical evidence in the record."  *See id.*  The ALJ then concluded that the claimant was only partially credible, stating that:

> After careful consideration of the entire record, including the medical evidence and the testimony at the hearing, I find the functional limitations resulting from the claimant's impairments were less serious than she has alleged. . . . [While] the medical evidence supports a findings that the claimant's impairments . . . impos[e] some restrictions, [they] did not prevent her from engaging in all work-related activities.

*Id.*  The court emphasized that making a single conclusory statement that the claimant's testimony has been considered and summarizing the administrative record and medical evidence to support a finding of residual functional capacity "is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible."  *Id.*  The court held that the ALJ fell short of meeting the standard because she never identified "which testimony she found not credible and never explained which evidence contradicted that testimony."  *Id.* at 494-95.  In other words, the ALJ erred because a specific linkage between the testimony and particular contractor evidence was not provided.  *Id.*

On the other hand, in *Smartt v. Kijakazi*, the Ninth Circuit held that the ALJ properly provided specific, clear, and convincing evidence to discount the claimant's subjective pain.  53 F.4th 489 (2022).  The ALJ in that case relied on the objective medical evidence, activities of daily living, and evidence of conservative treatment to make the credibility determination.  *Id.* at 497.  Importantly, in making the determination in *Smartt*, the ALJ  identified a direct and specific contradiction in the claimant's testimony regarding her ability to drive:

//

//

At hearings before the ALJ in August 2018 and April 2019, Smartt repeatedly testified that she had not driven since her neck surgery in 2015.  But in her Daily Activities Questionnaire dated April 10, 2016, Smartt reported that she routinely drove a car, and her typical daily activities included driving her daughter to school.

*Id.*  The ALJ there also identified multiple examples of Smartt's inconsistent use of mobility aids and contrasted them to the claimant's testimony about the extent of her limitations:

In her agency appeal in 2016, Smartt reported: "After contracting cellulitis in my right leg, which was injured in 2009, I have been unable to walk without the assistance of a walker."   Smartt also testified that she uses a cane, crutch, and wheelchair for assistance. . . .  Even when she visited the emergency room for pain and swelling in her right leg on March 10, 2016, Smartt was "able to ambulate on her leg" with no mention of a mobility aid. . . .  By contrast, Smartt typically appeared with a walker at Pain Center appointments and visits associated with her disability application.  Despite her sporadic use of mobility aids, she told the examining physician in September 2018 that she "ha[d] been using a walker . . . since 2016."

*Id.*  In light of the specific linkage, the Ninth Circuit held that the ALJ met the clear and convincing standard in finding the claimant not credible by identifying specific discrepancies between the claimant's testimony and the objective medical evidence.  *Id.* at 497–98.

Accordingly, for the ALJ to meet the clear and convincing standard, it is not sufficient for an ALJ simply to summarize the medical evidence at issue in the case and make a generalized statement that that record undermines the claimant's testimony.  *See Lambert*, 980 F.3d at 1277; *Brown-Hunter*, 806 F.3d at 490-91.  Rather, to meet the clear and convincing standard, the ALJ must identify, with specificity, the inconsistent portions of the medical report, link that evidence to the aspects of the testimony that are rendered not credible, and explain why the two are incongruent.  *See Smartt*, 53 F.4th at 497; *cf. Lambert*, 980 F.3d at 1277; *cf. Brown-Hunter*, 806 F.3d at 490-91.

Here, the ALJ included a detailed summary of the medical record at issue.  *See* AR 28–32. While the summary of the relevant medical evidence was extensive,[1] the ALJ did not link specific

---

[1] As explained in *Brown-Hunter*, it is not the length of the summary of medical evidence that is relevant, but the extent to which the ALJ connects the relevant medical record to the testimony that is purportedly not credible. 806 F.3d at 490-91 (finding that ALJ decision with eight-

1    medical evidence to the relevant testimony about A.P.'s symptoms and explain why the former

2    rendered the latter not credible.  *See id.*

3         Specifically, the ALJ concluded that "the medical evidence supports some physical

4    limitations but not the degree alleged."  AR 28.   To support this finding, the ALJ cited breathing

5    tests, heart rate tests, BMI, and cardiac and neurological results in the medical record which

6    showed largely normal results.  AR 28.  However, the ALJ did not explain why each of these tests

7    undermine A.P.'s testimony that she has difficulty breathing and quickly becomes winded

8    performing everyday tasks, including, e.g., standing, speaking, or walking.  *See* AR 28, 48–49.

9    The connection between the tests cited and the ALJ's conclusion is not obvious.  Specifically, the

10   breathing, cardiac, or neurological tests cited do not appear to have been conducted when the

11   claimant was undergoing any sort of physical exertion—making them less than probative as to the

12   claimant's ability to perform the physical tasks at issue.  *See* AR 28.  At the very least, the ALJ

13   failed to explicate the particular probative value of these tests to A.P's claimed inability to engage

14   in physical exertion.

15        The ALJ also stated that reports indicating normal "musculoskeletal signs, and intact gait

16   and extremity function" support that the claimant can still perform a reduced range of light work.

17   AR 29.  While a functioning musculoskeletal system is likely necessary to perform light work,

18   such a functioning system does not solve for the breathing problems of which A.P. complains.  *See*

19   AR 48-49.  To illustrate, one could have normal functioning of e.g., their arms, legs, and other

20   extremities, but still be unable to perform tasks because they quickly become out of breath.

21   Because the ALJ does not identify, with any specificity, the parts of A.P.'s testimony rendered not

22   credible by these reports, or explain why the two are incongruous, it is difficult to credit the ALJ's

23   rationale on this point.  For these same reasons, the ALJ failed to meet the clear and convincing

24   standard as exemplified in *Smartt*, *Lambert*, and *Brown-Hunter*.

25

26   ─────────────────

27   paragraph summary of the medical record at issue insufficient to meet the clear and convincing
     standard where the ALJ did not sufficiently link that record to the inconsistent testimony and
28   explain why the testimony was rendered not credible).

United States District Court
Northern District of California

1        Additionally, there is substantial evidence in the record supporting A.P.'s testimony as to

2    her limited functional capacity that the ALJ did not address at all.   Specifically, third party

3    statements from A.P.'s family members corroborate A.P. testimony, detailing A.P. struggles to

4    "perform exertion," and that she "is nearly always winded."  AR 27.  Additionally, reports cited by

5    the ALJ from physical therapists found that A.P. was easily fatigued.  AR 28 (citing AR 484).  But

6    in finding that A.P.'s physical limitations were only moderate, the ALJ did not address this

7    evidence.  *See* AR 28-29.

8        The Commissioner points to additional evidence in the record demonstrating that the

9    ALJ's conclusion about A.P.'s credibility was warranted.  D's Mot. at 9-10.  For example, the

10   Commissioner explains that A.P. self-discontinued the use of her walker and discontinued

11   physical therapy for lack of participation.  *Id.*  Additionally, her kidney function was described as

12   "cured" when she was discharged from rehabilitation.  *Id.*  Even assuming, *arguendo*, that these

13   factors would undermine A.P.'s testimony, this Court is constrained to review only the reasons

14   that the ALJ explicitly asserted in her decision.  *See Lambert*, 980 F.3d at 1278 ("The credibility

15   determination is exclusively the ALJ's to make."); *Brown-Hunter*, 806 F.3d at 491 ("Although the

16   inconsistencies identified by the district court could be reasonable inferences drawn from the

17   ALJ's summary of the evidence, the credibility determination is exclusively the ALJ's to make,

18   and ours only to review. . . . Thus, the inconsistencies identified independently by the district court

19   cannot provide the basis upon which we can affirm the ALJ's decision.").  As the ALJ did not

20   discuss these aspects of the record in her decision, they are not properly considered here as a basis

21   to uphold the credibility determination.  *See* AR 28-30.

22       Accordingly, the Court finds that the ALJ erred by not specifically linking A.P.'s

23   testimony to the medical record in her determination of credibility, thereby failing to meet the

24   "clear and convincing" standard.  *See Burch*, 400 F.3d at 680; *see also* AR 28.[2]

25   _____

26   [2] Defendant argues, in a footnote, that the clear and convincing standard is inconsistent with the
     deferential substantial evidence standard.  D's Mot. at 7, n.5.  Any disagreement with the clear and
27   convincing standard must be directed "to the Court of Appeals or to the United States Supreme
     Court" rather than the district court.  *See, e.g.*, *Jarrett v. Saul*, 2021 WL 4243393, *8 (N.D. Cal
28   2021).  Accordingly, this Court offers no opinion as to the propriety of this argument; this Court is

United States District Court
Northern District of California

1

                b.       <u>Adverse Credibility Based Upon Activities of Daily Living</u>

2        A.P. also argues that the ALJ erred by relying on her activities of daily living to partially

3  discredit her testimony regarding the extent of her subjective pain and limitations.  Pl's Mot. at 6–

4  7.  The ALJ acknowledged that A.P.'s impairments:

5

               restrict her ability to: perform any exertion without shortness of

6               breath, talk for long periods, stand more than a few minutes,
                balance, sit more than forty-five minutes, walk more than a few feet,

7               lift more than a gallon of milk, leave the house, tolerate certain
                environments due to dizziness, remember, complete tasks, go out in

8               public, and complete a normal day without additional breaks.

9  AR 27.  Despite this, the ALJ characterized A.P. as able "to perform most activities of daily living

10  independently" at multiple points of the opinion.  AR 29, 31.  Ultimately, ALJ Benton found that

11  "[A.P.]'s testimony that she can independently care for herself and her family and perform all

12  activities of daily living despite anxiety and unwillingness to go out and interact is inconsistent

13  with marked limitations in adaptation."  AR 31.

14        An ALJ may properly come to an adverse credibility determination as to subjective pain

15  testimony based upon activities of daily living where: (1) the activities of daily living contradict

16  the claimant's other testimony; and/or (2) the activities of daily living meet the threshold for

17  transferable work skills.  *Orn*, 495 F.3d at 639.  In discrediting the claimant's testimony on the

18  basis of activities of daily living, the ALJ must again meet the clear and convincing standard.  *See*,

19  *e.g.*, *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017) (holding that the ALJ erred by not

20  providing "clear and convincing" evidence to discredit the claimant on the basis of activities of

21  daily living); *see Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) (finding that the

22  "supposed inconsistencies" identified by the ALJ between the claimant's daily activities and her

23  testimony did not meet the standard of clear, convincing and specific reasons); *Contreras v. Saul*,

24  477 F. Supp. 3d 1107. 1124 (S.D. Cal. Apr. 3, 2020) (holding that the ALJ mischaracterized the

25  claimant's testimony by selectively presenting some daily activities and ignoring others, and erred

26  by failing to provide "specific, clear and convincing reasons for disregarding [those

27  ———————————————

28  bound to apply the clear and convincing standard as has been dictated by the Ninth Circuit Court
  of Appeals.

United States District Court
Northern District of California

1  limitations]").]

2      The Ninth Circuit has also repeatedly held that an ALJ may not discredit a claimant "by

3  ignoring competent evidence in the record that suggests an opposite result."   *Diedrich v.*

4  *Berryhill*, 874 F.3d 634, 642–43 (9th Cir. 2017) (holding that "[the claimant] could participate in

5  some daily activities does not contradict the evidence of otherwise severe problems that she

6  encountered in her daily life during the relevant period"); *see also Nicole N.-M. v. Commissioner,*

7  *Soc. Sec. Admin.*, 649 F. Supp. 3d 1025, 1035 (D. Or. Dec. 31, 2022) ("The ALJ cannot

8  mischaracterize statements and documents in the record or take these out of context in order to

9  reach [her] conclusion on the claimant's credibility.") (citing *Reddick v. Chater*, 157 F.3d 715,

10  722–23 (9th Cir. 1998)).

11      For example, in *Garrison*, the ALJ discredited the claimant using her activities of daily

12  living on the basis that the activities were inconsistent with the claimant's testimony regarding the

13  extent of her limitations.  *See* 759 F.3d at 1015.  The ALJ supported the finding there by

14  emphasizing the claimant's ability to talk on the phone, prepare meals, clean, and help take care of

15  her daughter.  *Id.* at 1016.  However, the ALJ ignored evidence that the claimant needed assistance

16  from her mother to complete all of the aforementioned tasks, as well as the claimant's testimony

17  that her pain regularly prohibited her from doing laundry, picking up her daughter, carrying more

18  than a few pounds, and required her to rest after performing these activities.  *Id.*  Because the ALJ

19  ignored this countervailing evidence, the court held that the ALJ erred by mischaracterizing the

20  claimant's testimony.  *Id.* at 1015–16; *see Contreras v. Saul*, 477 F. Supp. 3d 1107. 1124 (S.D.

21  Cal. Apr. 3, 2020) (holding that the ALJ mischaracterized the claimant's testimony by selectively

22  presenting some daily activities and ignoring others, and erred by failing to provide "specific, clear

23  and convincing reasons for disregarding [those limitations]").

24      Similarly in the case at hand, ALJ Benton mischaracterized A.P.'s activities of daily living

25  by conclusorily stating that A.P. "can independently care for herself and her family and perform

26  all activities of daily living despite anxiety and unwillingness to go out and interact."  AR 31; *see,*

27  *e.g.*, *Diedrich*, 874 F.3d at 643; *Garrison*, 759 F.3d at 1016.  While A.P. did testify that she is able

28  to care for her children on her own to some extent, that she can cook light meals, and that she can

United States District Court
Northern District of California

do some chores, ALJ Benton ignored A.P.'s struggles with her daily activities, including being unable to sweep or mop, go grocery shopping, do laundry, and go outside on her own. *See* AR 31, 50–52. A.P. also testified that she relies upon her nine-year old child and her sister's help to do basic tasks such as taking out the trash, grocery shopping, doing laundry, going outside, and completing chores. *See* AR 51–52; *Garrison*, 759 F.3d at 1016 ("[The claimant] repeatedly emphasized that in performing many daily tasks, including caring for her daughter, she was heavily assisted by her mother."). Ultimately, the ALJ's characterization of A.P. as "able to perform *all* activities of daily living" is in direct contradiction with the record, as evidenced by A.P.'s lack of ability to do most chores independently or go outside by herself. *See* AR 31, 50–52 (emphasis added). This amounts to a mischaracterization of claimant's testimony.

The ALJ also erred by finding that A.P.'s daily activities—if taken in the manner claimant describes them—were inconsistent with her testimony regarding the extent of her impairments. *See Garrison*, 759 F.3d at 1016. The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain." *Id.* (citing *Smolen*, 80 F.3d at 1297 n.7). To this end, courts find that such a determination is proper only where the activities of daily living performed meet the threshold to be considered transferable work skills. *See Contreras*, 477 F. Supp. 3d at 1124 (citing *Fair v. Bowen*, 885 F.3d 597, 603 (9th Cir. 1989); *Diedrich*, 874 F.3d at 643. For activities to be considered transferable work skills, the claimant must be "able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d at 639.[3]

---

[3] A.P. cites to the Fourth Circuit standard in assessing the ALJ's determination on this point. Pl's Mot. at 7 (citing *Woods v. Berryhill*, 888 F.3d 686, 694-95 (4th Cir. 2018)). The Fourth Circuit in *Woods* stated that "[a]n ALJ may not consider the type of activities a claimant can perform without also considering the extent to which she can perform them." *Woods*, 888 F.3d at 694-95. The Fourth Circuit approach is similar to the Ninth Circuit approach in that both consider the type of work performed and the nature of the ability to perform it. Specifically, in the Ninth Circuit it is the duration of the activity that is most relevant, *see Orn*, 495 F.3d at 639 (asking if a substantial part of the day is spent doing the theoretically transferable task), and in the Fourth Circuit it is the "extent to which [a claimant]" can perform the tasks at issue, *Woods*, 888 F.3d at 694-95, which might include duration. *Id.* Ultimately, however, it is the Ninth Circuit standard that governs this Court, and thus it is applied herein.

United States District Court
Northern District of California

For example, in *Contreras*, the court held that the ALJ erred in part because claimant's daily activities were, contrary to the ALJ finding, consistent with her testimony regarding the severity of her limitations. 477 F. Supp. 3d at 1124. There, the court concluded that the claimant's testimony that she could spend "an hour or two" per day on chores and cooking, going to the grocery store, or watching television did not discredit the severity of the claimant's limitations. *Id.* at 1125. This was because these daily activities did "not appear to take up a 'substantial' part of her day" and it was unclear whether "she could accomplish similar tasks in the workplace." *Id.* at 1125.

Similarly, in *Diedrich*, the Ninth Circuit held that, in addition to the ALJ's error in mischaracterizing the claimant's daily activities, the ALJ erred in determining that the daily activities performed undermined the claimant's testimony. 874 F.3d at 643. Specifically, the court reasoned that cooking, self-grooming, and occasional shopping were not similar to common work responsibilities. *Id.* And even though the claimant was able to perform those tasks, "she was likely not doing them with the consistency and persistence that a work environment requires." *Id.* Lastly, because the claimant's symptoms included social anxiety, it was very likely that a task was easy to perform at home but incredibly difficult to perform outside the home." *Id.*

Similarly, here, A.P.'s testimony reflects that she cannot complete tasks with any semblance of stamina. *See, e.g.*, AR 51-52. While A.P. can do dishes and can microwave meals for her children, she testified that she must do both in increments or she experiences severe back pain and becomes winded. *See* AR 48-49, 51. A.P. also testified that she requires her sisters' assistance to carry her clothes to the washing machine in their garage and back to the house, where A.P. helps with the folding. *See* AR 51–52. That A.P. is able to spend "an hour or two" per day performing these daily activities does not amount to her spending a substantial amount of her day performing them, nor does it mean she could perform them in the workplace without the family assistance she receives at home. For these reasons, the record does not establish these activities are transferable to the work setting. *See, e.g.*, *Contreras*, 477 F. Supp. 3d at 1125.

Additionally, A.P. repeatedly testified that she experiences anxiety that hinders her activities of daily living. *See* AR 51-54. Specifically, she attests that she needs someone to

18

accompany her to medical appointments because of her severe fear of contracting Covid-19 again; she testified she is "so scared of the outside world" that even the mere thought of going back to work "terrifies" her.  See AR 51–54.  A.P.'s anxiety makes it likely that any task that is easy to perform at home will be potentially much harder for her to perform outside.  *See Diedrich*, 874 F.3d at 643.  Therefore, A.P.'s daily activities are not inconsistent with her testimony that she is unable to work; the activities she can perform are not transferable to the work setting as transferability has been defined by the Ninth Circuit.  *See Garrison*, 759 F.3d at 1016.

Finally, as ALJ Benton did not make specific findings "as to the pervasiveness of these activities, what they entailed, or how the physical functions displayed during the activities are transferrable to a work setting," the ALJ's finding that the activities of daily living rendered A.P.'s testimony not credible is erroneous.  *See Contreras*, 477 F. Supp. 3d at 1125 (citing *Smith v. Berryhill*, 704 F. App'x 652, 653 (9th Cir. 2017) (ALJ must state "specific, clear and convincing reasons for disregarding" testimony as to limitations on activities of daily living).

Accordingly, the Court finds that the ALJ erred by mischaracterizing A.P.'s daily activities, by finding the activities inconsistent with A.P.'s testimony as to her limitations, and ultimately, and by failing to provide "specific, clear, and convincing" reasons for using those activities to discredit her testimony.  *See Garrison*, 759 F.3d at 1016; *see also Contreras*, 477 F. Supp. 3d at 1125; *Diedrich*, 874 F.3d at 643.

c.   Adverse Credibility Based Upon Treatment History

Though A.P. does not raise this argument, the ALJ appears to have also erroneously relied in part upon A.P.'s lack of treatment as a basis to find A.P.'s testimony not credible.  Specifically, in making the adverse credibility determination the ALJ also stated that "[t]he level of care after [A.P.] was discharged from rehabilitation in June of 2020 is inconsistent with disabling limitations."  AR 28.  On this point, the ALJ cited a report showing that the A.P. sought care by a cardiologist but did not have a pulmonologist.  *Id.*  The implicit reasoning utilized is that A.P.'s breathing issues were not so bad as to warrant treatment, undermining her testimony as to complete disability.  *See id.*  However, A.P.'s lack of treatment may be explained by the fact that A.P. did not have medical insurance, preventing her from being referred to a pulmonologist.  *Id.*

19

Ninth Circuit has held that "disability benefits may not be denied because of the claimant's failure to obtain treatment" where that treatment is not obtained due to financial issues. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (citing *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). Thus, the lack of treatment is not a proper basis for discrediting A.P.'s testimony.

B.     Harmless Error and Nature of Remand

        As explained above, the ALJ erred in finding A.P.'s testimony as to the extent of her limitations not credible. When an ALJ commits legal error, this Court must still uphold the decision if that error is harmless. *Treichler v. Commissioner of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). An error is harmless if it is "inconsequential to the ultimate disability determination." *Id.* If the ALJ committed an error that was non-harmless, this Court has the discretion to reverse the decision and remand, either for immediate calculation of benefits or for further proceedings. *Id.*; 42 U.S.C. § 405(g).

        1.     Harmless Error

        The burden of showing that an error is harmful falls upon the party attacking the agency's determination—typically the claimant. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). The Ninth Circuit has been "cautious about when harmless error should be found." *Brown-Hunter*, 806 F.3d at 492; *See also Brown-Hunter*, 806 F.3d at 496 (finding failure to meet the "clear and convincing" standard in a credibility determination is non-harmless error); *Lambert*, 980 F.3d at 1278 (finding failure to meet the "clear and convincing" standard in a credibility determination is non-harmless error); *Smolen*, 80 F.3d at 1273 (similar). Ultimately, an error as to lack of credibility can only be considered harmless when "no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). Put differently, the error "[a]n error is harmless only if it is inconsequential to the ultimate nondisability determination." *Brown-Hunter*, 806 F.3d at 494 (internal quotations omitted).

        Thus, there are two questions presented: (1) did legal error infect the credibility determination; and (2) did the adverse credibility determination infect the ultimate decision as to disability?

United States District Court
Northern District of California

On the first point, because the ALJ erred regarding each of the three bases of finding A.P. not credible (medical reports, activities of daily living, and treatment history), it is obvious that legal error infected the ALJ's credibility determination. *See, e.g.*, *Brown-Hunter*, 806 F.3d at 494 (finding adverse credibility determination that was erroneous for failure to state specific, clear, and convincing reasons for finding testimony not credible per medical reports was harmful).

On the second point, the Court cannot say that the adverse credibility determination was "inconsequential to the ultimate nondisability determination." *Brown-Hunter*, 806 F.3d at 494. Specifically, the decision not to credit A.P.'s testimony that she was totally disabled informed the ALJ's determination at step four of the analysis that A.P. maintained some residual functional capacity allowing her to perform light work. AR 26-27. Specifically, the ALJ found she could perform certain tasks including, e.g., occasionally climbing stairs and ramps, and ability to stoop, kneel, crouch, and crawl and ability to maintain occasional interaction with supervisors, coworkers, and members of the public. *Id.* And this finding that A.P. could perform light work informed the ultimate decision that A.P. was not disabled. Specifically, based upon this determination as to residual functional capacity, at step five of the analysis the ALJ determined that there were jobs that exist in significant numbers in the national economy that A.P. could perform. *See* 20 C.F.R. §§ 404.1520(a)(4)(v) (considering if work can still be performed based upon residual functional capacity). Because there were such jobs in the economy accommodating ability to perform only light work (such as photocopy machine operator, non-postal mail clerk, and office helper) the ALJ found A.P. not disabled. *See* AR 33-34. Accordingly, the Court cannot say that the adverse credibility determination was inconsequential to the disability determination; the ALJ's finding of A.P.'s residual functional capacity informed the outcome. *See also See Treichler*, 775 F.3d at 1097 (finding error as to credibility determination harmful); *Brown-Hunter*, 806 F.3d at 494 (similar). Accordingly, A.P. has established harmful error.

2.   <u>Nature of Remand</u>

When remand for harmful error is appropriate the Court has two options: (1) remand for further proceedings; or (2) remand for immediate calculation of benefits. *See Treichler*, 775 F.3d at 1099. Here, the former is appropriate.

The Commissioner argues that, to the extent the Court finds legal error, the proper course would be to remand to the agency for further proceedings.  D's Mot. at 16.  A.P. argues that either remand for immediate calculation of benefits or remand for further proceedings would be appropriate. Pl's Mot. at 1, 8-9.

It is rare to reverse for calculation for benefits.  *Treichler*, 775 F.3d at 1099.  Rather, the ordinary course is to remand for additional investigation.  *See id.*  Specifically, this is appropriate when the record does not support the ALJ's decision, the ALJ has not considered all the relevant factors, or the reviewing court cannot fully evaluate the ALJ's decision on the record before it. *See id.*  The rare circumstance that allows this Court to remand for immediate calculation of benefits is defined by the three-step "credit-as-true" rule.  *Id.* at 1100.   The following three steps must be met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; (2) the record has been fully developed and further administrative proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."  *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014).

As explained above, the ALJ committed legal error, satisfying step one.  However, the second step of the credit-as-true rule asks the Court to consider whether further administrative proceedings would serve a useful purpose.  *See Burrell*, 775 F.3d at 1141.  For the reasons explained below, further proceedings would be useful.

Generally, further proceedings are useful where there are other bases in the record, aside from legal error, that could support the ALJ's finding.  For example, in *Brown-Hunter*, despite the Ninth Circuit's conclusion that there was harmful error, the court held that remanding for an immediate award of benefits was inappropriate.  *Brown-Hunter*, 806 F.3d at 495.  Specifically, there were inconsistencies in the record that raised questions about the extent of the claimant's pain, such as medical evidence finding that her pain averaged a 5 out of 10 and that she could independently perform her activities of daily living.  *Id.* at 496.  The record in that case also suggested that the claimant's pain was adequately controlled with medication and that she was able to function well.  *Id.*  So, although the ALJ failed to meet the clear and convincing standard in

United States District Court
Northern District of California

1   discrediting the testimony, remand remained useful. *Id.* Similarly, in *Treichler*, the Ninth Circuit

2   remanded for further proceedings even though the ALJ erred in their credibility determination

3   because there were significant factual conflicts in the record between the claimant's testimony and

4   the objective medical evidence. 775 F.3d at 1104, 1107.

5         Similarly, here, there are inconsistencies in the record that could be resolved through

6   further proceedings and that could inform, amongst other aspects of the analysis, the credibility

7   determination. For example, as the Commissioner points out in their brief, A.P.'s self-

8   discontinued use of her walker and termination from physical therapy for lack of participation is

9   inconsistent with her testimony regarding her lack of balance and physical pain. *See* D's Mot. at 9

10   (citing AR 785, 789). But elsewhere in the record, A.P. reported to her physical therapists that she

11   stopped using her walker because she felt like it was making matters worse. AR 484. As further

12   proceedings would be useful to resolve these points and allow for the ALJ to restate her reasoning

13   regarding the credibility determination with more specificity, the Court find that remand for

14   further proceedings is appropriate.

### IV.     CONCLUSION

16         For the foregoing reasons, the Court concludes that ALJ Benton committed clear error by

17   discrediting A.P.'s testimony based upon medical evidence, activities of daily living, and

18   treatment history. Accordingly, the Court **GRANTS** A.P.'s motion for summary judgment and

19   **DENIES** defendants' cross-motion. The Court remands the case to the ALJ for further

20   proceedings.

22         **IT IS SO ORDERED**.

24   Dated: January 3, 2024

26   _____

27   EDWARD M. CHEN
    United States District Judge